# EXHIBIT B

OMB Approval 2502-0204
Exp 06/30/2017

# MODEL LEASE FOR SUBSIDIZED PROGRAMS

1. Parties and Dwelling Unit:
   The parties to this agreement are, Fifth & 106th Street Associates L.P., referred to as the Landlord, and

   MARK HAYNES

   referred to as the Tenant.

   The Landlord leases to the Tenant(s) unit number 15B located at 4 East 107th St., NY, NY 10029 in the project known as Lakeview Apartments.

2. Length of Time (Term):
   The initial term of this Agreement shall begin on October 1, 2018 and end on September 30, 2019. After the initial term ends, the Agreement will continue for successive terms of one month each unless automatically terminated as permitted by paragraph 23 of this Agreement.

3. Rent:
   The Tenant agrees to pay $_____ for the partial month ending on _____. After that, Tenant agrees to pay a rent of $1,905. This amount is due on the 1st day of the month at P.O. Box 5269 New York, NY 10008.

   The Tenant understands that this monthly rent is less than the market (unsubsidized) rent due on this unit. This lower rent is available either because the mortgage on this project is subsidized by the Department of Housing and Urban Development (HUD) and/or because HUD makes monthly payments to the Landlord on behalf of the Tenant. The amount, if any, that HUD makes available monthly on behalf of the Tenant is called the tenant assistance payment and is shown on the "Assistance Payment" line of the Owner's Certification of Compliance with HUD's Tenant Eligibility and Rent Procedures form which is Attachment No. 1 to this Agreement.

4. Changes in the Tenant's Share of the Rent:
   The Tenant agrees that the amount of rent the Tenant pays and/or the amount of assistance that HUD pays on behalf of the Tenant may be changed during the term of this Agreement if:

   a. HUD or the Contract Administrator (such as a Public Housing Agency) determines, in accordance with HUD procedures, that an increase in rents is needed;

 

1

Form HUD-90105a
12/2007

OMB Approval 2502-0204
Exp 06/30/2017

    c.  the income, the number of persons in the Tenant's household or other factors considered in calculating the Tenant's rent change and HUD procedures provide that the Tenant's rent or assistance payment be adjusted to reflect the change;

    d.  changes in the Tenant's rent or assistance payment are required by HUD's recertification or subsidy termination procedures;

    e.  HUD's procedures for computing the Tenant's assistance payment or rent change; or

    f.  the Tenant fails to provide information on his/her income, family composition or other factors as required by the Landlord.

The Landlord agrees to implement changes in the Tenant's rent or tenant assistance payment only in accordance with the time frames and administrative procedures set forth in HUD's handbooks, instructions and regulations related to administration of multifamily subsidy programs. The Landlord agrees to give the Tenant at least 30 days advance written notice of any increase in the Tenant's rent except as noted in paragraphs 11, 15 or 17. The Notice will state the new amount the Tenant is required to pay, the date the new amount is effective, and the reasons for the change in rent. The Notice will also advise the Tenant that he/she may meet with the Landlord to discuss the rent change.

5.    Charges for Payments Returned Checks:
If the Tenant does not pay the full amount of the rent shown in paragraph 3 by the end of the 5th day of the month, the Landlord may collect a fee of $5 on the 6th day of the month. Thereafter, the Landlord may collect $1 for each additional day the rent remains unpaid during the month it is due.

The Landlord may not terminate this Agreement for failure to pay late charges, but may terminate this Agreement for non-payment of rent, as explained in paragraph 23. The Landlord may collect a fee of $35.00 on the second or any additional time a check is not honored for payment (bounces). The charges discussed in this paragraph are in addition to the regular monthly rent payable by the Tenant.

6.    Condition of Dwelling Unit:
By signing this Agreement, the Tenant acknowledges that the unit is safe, clean and in good condition. The Tenant agrees that all Appliances and equipment in the unit are in good working order, except as described on the Unit Inspection Report, which is Attachment No. 2 to this Agreement. The Tenant also agrees that the Landlord has made no promises to decorate, alter, repair or improve the unit, except as listed on the Unit Inspection Report.

7    Charges for Utilities and Services:
The following charts describe how the cost of utilities and services related to occupancy of the unit will be paid. The Tenant agrees that these charts accurately describe the utilities and services paid by the Landlord and those paid by the Tenant.

    a.  The Tenant must pay for the utilities in column (1). Payments should be made directly to the appropriate utility company. The items in column (2) are included in the Tenant's rent.



2

Form HUD-90105a
12/2007

OMB Approval 2502 0204
Exp 06/30/2017

| (1) Put "x" by any Utility Tenant pays directly | Type of Utility | (2) Put an "x" by any utility included in Tenant Rent |
|---|---|---|
|  | Heat | X |
|  | Lights, Electric | X |
|  | Cooking | X |
|  | Water | X |
|  | Other – Specify |  |
|  | ALL | X |

b. The Tenant agrees to pay the Landlord the amount shown in column (3) on the date the rent is due. The Landlord certifies that HUD had authorized him/her to collect the type of charges shown in column (3) and that the amounts shown in column (3) do not exceed the amounts authorized by HUD.

|  | Show Amount Tenant Pays to Landlord in Addition to Rent |
|---|---|
| Parking | $ |
| Other (Specify) | $ |
| Air Conditioner (AC) | $20.00 per month per AC unit |
|  | $ |
|  | $ |

8. Security Deposits:
The Tenant has deposited $747 with the Landlord. The Landlord will hold this security deposit for the period the Tenant occupies the unit. After the Tenant has moved from the unit, the Landlord will determine whether the Tenant is eligible for a refund of any or all of the security deposit. The amount of the refund will be determined in accordance with the following conditions and procedures.

   a. The Tenant will be eligible for a refund of the security Deposit only if the Tenant provided the Landlord with the 30-day written notice of intent to move required by paragraph 23, unless the Tenant was unable to give the notice for reasons beyond his/her control.

   b. After the Tenant has moved from the unit, the Landlord will inspect the unit and complete another Unit Inspection Report. The Landlord will permit the Tenant to participate in the inspection, if the Tenant so requests.



3

Form HUD-90105a
12/2007

OMB Approval 2502-0204
Exp 06/30/2017

c. The Landlord will refund to the Tenant the amount of the security deposit plus interest computed at <u>bank rate -1.00% fee</u>, beginning _____, less any amount needed to pay the cost of:

(1) unpaid rent;
(2) damages that are not due to normal wear and tear and are not listed on the Unit Inspection Report;
(3) charges for late payment of rent and returned checks, as described in paragraph 5; and
(4) charges for unreturned keys, as described in paragraph 9.

d. The Landlord agrees to refund the amount computed in paragraph 8c within <u>45</u> days after the Tenant has permanently moved out of the unit, returned possession of the unit to the Landlord, and given his/her new address to the Landlord. The Landlord will also give the Tenant a written list of charges that were subtracted from the deposit. If the Tenant disagrees with the Landlord concerning the amounts deducted and asks to meet with the Landlord, the Landlord agrees to meet with the Tenant and informally discuss the disputed charges.

e. If the unit is rented by more than one person, the Tenants agree that they will work out the details of dividing any refund among themselves. The Landlord may pay the refund to any Tenant identified in Paragraph 1 of this Agreement.

f. The Tenant understands that the Landlord will not count the Security Deposit towards the last month's rent or towards repair charges owed by the Tenant in accordance with paragraph 11.

9. Keys and Locks:
The Tenant agrees not to install additional or different locks or gates on any doors or windows of the unit without the written permission of the Landlord. If the Landlord approves the Tenant's request to install such locks, the Tenant agrees to provide the Landlord with a key for each lock. When this Agreement ends, the Tenant agrees to return all keys to the dwelling unit to the Landlord. <u>The Landlord may charge the Tenant $35.00 for each key not returned and $50.00 per lost key fob.</u>

10. Maintenance:
a. The Landlord agrees to:
(1) regularly clean all common areas of the project;
(2) maintain the common areas and facilities in a safe condition;
(3) arrange for collection and removal of trash and garbage;
(4) maintain all equipment and appliances in safe and working order; (5) make necessary repairs with reasonable promptness;
(6) maintain exterior lighting in good working order;
(7) provide extermination services, as necessary; and (8) maintain grounds and shrubs.
b. The Tenant agrees to:
(1) keep the unit clean;
(2) use all appliances, fixtures and equipment in a safe manner and only for the purposes for which they are intended;
(3) not litter the grounds or common areas of the project;



4

Form HUD-90105a
12/2007

OMB Approval 2502-0204
Exp 06/30/2017

(4) not destroy, deface, damage or remove any part of the unit, common areas, or project grounds;
(5) give the Landlord prompt notice of any defects in the plumbing, fixtures, appliances, heating and cooling equipment or any other part of the unit or related facilities; and
(6) remove garbage and other waste from the unit in a clean and safe manner.

11. Damages:
Whenever damage is caused by carelessness, misuse, or neglect on the part of the Tenant, his/her family or visitors, the Tenant agrees to pay:

a. the cost of all repairs and do so within 30 days after receipt of the Landlord's demand f or the repair charges; and

b. rent for the period the unit is damaged whether or not the unit is habitable. The Tenant understands that HUD will not make assistance payments for any period in which the unit is not habitable. For any such period, the Tenant agrees to pay the HUD-approved market rent rather than the Tenant rent shown in paragraph 3 of this agreement.

12. Restrictions on the Alterations:
No alteration, addition, or improvements shall be made in or to the premises without prior consent of the Landlord in writing. The Landlord agrees to provide reasonable accommodation to an otherwise eligible tenant's disability, including making changes to rules, policies, or procedures, and making and paying for structural alterations to a unit or common areas. The Landlord is not required to provide accommodations that constitute a fundamental alteration to the Landlord's program or which would pose a substantial financial and administrative hardship. See the regulations at 24 CFR Part 8. In addition, if a requested structural modification does pose a substantial financial and administrative hardship, the Landlord must then allow the tenant to make and pay for the modification in accordance with the Fair Housing Act.

13. General Restrictions:
The Tenant must live in the unit and the unit must be the Tenant's only place of residence. The Tenant shall use the premises only as a private dwelling for himself/herself and the individuals listed on the Owner's Certification of Compliance with HUD's Tenant Eligibility and Rent Procedures, Attachment 1. The Tenant agrees to permit other individuals to reside in the unit only after obtaining the prior written approval of the Landlord. The Tenant agrees not to:

a. sublet or assign the unit, or any part of the unit;

b. use the unit for unlawful purposes;

c. engage in or permit unlawful activities in the unit, in the common areas or on the project grounds;

d. have pets or animals of any kind in the unit without the prior written permission of the Landlord, but the landlord will allow the tenant to keep an animal needed as a reasonable accommodation to the tenant's disability, and will allow animals to




5

Form HUD-90105a
12/2007

OMB Approval 2502-0204
Exp 06/30/2017

accompany visitors with disabilities who need such animals as an accommodation to their disabilities; or

e. make or permit noises or acts that will disturb the rights or comfort of neighbors. The Tenant agrees to keep the volume of any radio, phonograph, television or musical instrument at a level, which will not disturb the neighbors.

14. Rules:
The Tenant agrees to obey the House Rules, which are Attachment No. 3 to this Agreement. The tenant agrees to obey additional rules established after the effective date of this Agreement if:

a. the rules are reasonably related to the safety, care and cleanliness of the building and the safety, comfort and convenience of the Tenants; and

b. the Tenant receives written notice of the proposed rule at least 30 days before the rule is enforced.

15. Regularly Scheduled Recertifications:
Every year around the first day of June, the Landlord will request the Tenant to report the income and composition of the Tenant's household and to supply any other information required by HUD for the purposes of determining the Tenant's rent and assistance payment, if any. The Tenant agrees to provide accurate statements of this information and to do so by the date specified in the Landlord's request. The landlord will verify the information supplied by the Tenant and use the verified information to recompute the amount of the Tenant's rent and assistance payment, if any.

a. If the Tenant does not submit the required recertification information by the date specified in the Landlord's request, the Landlord may impose the following penalties. The Landlord may implement these penalties only in accordance with the administrative procedures and time frames specified in HUD's regulations, handbooks and instructions related to the administration of multifamily subsidy programs.

(1) Require the Tenant to pay the higher, HUD-approved market rent for the unit.
(2) Implement any increase in rent resulting from the recertification processing without providing the 30-day notice otherwise required by paragraph 4 of this Agreement.

b. The Tenant may request to meet with the Landlord to discuss any change in rent or assistance payment resulting from the recertification processing. If the Tenant requests such a meeting, the Landlord agrees to meet with the Tenant and discuss how the Tenant's rent and assistance payment, if any, were computed.

16. Reporting Changes Between Regularly Scheduled Recertifications:
a. If any of the following changes occur, the Tenant agrees to advise the Landlord immediately.

(1) Any household member moves out of the unit.



6

Form HUD-90105a
12/2007

OMB Approval 2502-0204
Exp 06/30/2017

(2) An adult member of the household who was reported as unemployed on the most recent certification or recertification obtains employment.
(3) The household's income cumulatively increases by $200 or more a month.

b. The Tenant may report any decrease in income or any change in other factors considered in calculating the Tenant's rent. Unless the Landlord has confirmation that the decrease in income or change in other factors will last less than one month, the Landlord will verify the information and make the appropriate rent reduction. However, if the Tenant's income will be partially or fully restored within two months, the Landlord may delay the certification process until the new income is known, but the rent reduction will be retroactive and the Landlord may not evict the Tenant for nonpayment of rent due during the period of the reported decrease and the completion of the certification process. The Tenant has thirty days after receiving written notice of any rent due for the above described time period to pay or the Landlord can evict for nonpayment of rent. (Revised 3/22/89)

c. If the Tenant does not advise the Landlord of these interim changes, the Landlord may increase the Tenant's rent to the HUD-approved market rent. The Landlord may do so only in accordance with the time frames and administrative procedures set forth in HUD's regulations, handbooks and instructions on the administration of multifamily subsidy programs.

d  The Tenant may request to meet with the Landlord to discuss how any change in income or other factors affected his/her rent or assistance payment, if any. If the Tenant requests such a meeting, the Landlord agrees to meet with the Tenant and explain how the Tenant's rent or assistance payment, if any, was computed.

17. Removal of Subsidy:
a. The Tenant understands that assistance made available on his/her behalf may be terminated if events in either items 1 or 2 below occur. Termination of assistance means that the Landlord may make the assistance available to another Tenant and the Tenant's rent will be re-computed. In addition, if the Tenant's assistance is terminated because of criterion (1) below, the Tenant will be required to pay the HUD-approved market rent for the unit.

(1) The Tenant does not provide the Landlord with the information or reports required by paragraph 15 or 16 within 10 calendar days after receipt of the Landlord's notice of intent to terminate the Tenant's assistance payment.
(2) The amount the Tenant would be required to pay towards rent and utilities under HUD rules and regulations equals the Family Gross Rent shown on Attachment 1.

b. The Landlord agrees to give the Tenant written notice of the proposed termination. The notice will advise the Tenant that, during the ten calendar days following the date of the notice, he/she may request to meet with the Landlord to discuss the proposed termination of assistance. If the Tenant requests a discussion of the proposed termination, the Landlord agrees to meet with the Tenant.

 

7

Form HUD-90105a
12/2007

OMB Approval 2502-0204
Exp 06/30/2017

c. Termination of assistance shall not affect the Tenant's other rights under this Agreement, including the right to occupy the unit. Assistance may subsequently be reinstated if the Tenant submits the income or other data required by HUD procedures, the Landlord determines the Tenant is eligible for assistance, and assistance is available.

18. Tenant Obligation To Repay:
If the tenant submits false information on any application, certification or request for interim adjustment or does not report interim changes in family income or other factors as required by paragraph 16 of this Agreement, and as a result, is charged a rent less than the amount required by HUD's rent formulas, the Tenant agrees to reimburse the Landlord for the difference between the rent he/she should have paid and the rent he/she was charged. The Tenant is not required to reimburse the Landlord for undercharges caused solely by the Landlord's failure to follow HUD's procedures for computing rent or assistance payments.

19. Size of Dwelling:
The Tenant understands that HUD requires the Landlord to assign units in accordance with the Landlord's written occupancy standards. These standards include consideration of unit size, relationship of family members, age and sex of family members and family preference. If the Tenant is or becomes eligible for a different size unit, and the required size unit becomes available, the Tenant agrees to:

   a. move within 30 days after the Landlord notifies him/her that unit of the required size is available within the project; or

   b. remain in the same unit and pay the HUD-approved market rent.

20. Access by Landlord:
   a. The Landlord agrees to enter the unit only during reasonable hours, to provide reasonable advance notice of his/her intent to enter the unit, and to enter the unit only after receiving the Tenant's consent to do so, except when urgency situations make such notices impossible or except under paragraph (c) below.

   b. The Tenant consents in advance to the following entries into the unit:

      (i) The tenant agrees to permit the Landlord, his/her agents or other persons, when authorized by the Landlord, to enter the unit for the purpose of making reasonable repairs and periodic inspections.
      (ii) After the Tenant has given a notice of intent to move, the Tenant agrees to permit the Landlord to show the unit to prospective tenants during reasonable hours.

   c. If the Tenant moves before this Agreement ends, the Landlord may enter the unit to decorate, remodel, alter or otherwise prepare the unit for re-occupancy.

21 Discrimination Prohibited:
The Landlord agrees not to discriminate based upon race, color, religion, creed, National origin, sex, age, familial status, and disability.



8

Form HUD-90105a
12/2007

OMB Approval 2502-0204
Exp 06/30/2017

22. Change Rental in Agreement:
The Landlord may, with the prior approval of HUD, change the terms and conditions of this Agreement. Any changes will become effective only at the end of the initial term or a successive term. The Landlord must notify the Tenant of any change and must offer the Tenant a new Agreement or an amendment to the existing Agreement. The Tenant must receive the notice at least 60 days before the proposed effective date of the change. The Tenant may accept the changed terms and conditions by signing the new Agreement or the amendment to the existing Agreement and returning it to the Landlord. The Tenant may reject the changed terms and conditions by giving the Landlord written notice that he/she intends to terminate the tenancy. The Tenant must give such notice at least 30 days before the proposed change will go into effect. If the

Tenant does not accept the am ended agreement, the Landlord may require the Tenant to move from the project, as provided in paragraph 23.

23. Termination of Tenancy:
a. To terminate this Agreement, the Tenant must give the Landlord 30-days written notice before moving from the unit.

b. Any termination of this Agreement by the Landlord must be carried out in accordance with HUD regulations, State and local law, and the terms of this Agreement.

c. The Landlord may terminate this Agreement for the following reasons:

(1) the Tenant's material noncompliance with the terms of this Agreement;
(2) the Tenant's material failure to carry out obligations under any State Landlord and Tenant Act;
(3) drug related criminal activity engaged in on or near the premises, by any tenant, household member, or guest, and any such activity engaged in on the premises by any other person under the tenant's control;
(4) determination made by the Landlord that a household member is illegally using a drug;
(5) determination made by the Landlord that a pattern of illegal use of a drug interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents;
(6) criminal activity by a tenant, any member of the tenant's household, a guest or another person under the tenant's control:
(i) that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents (including property management staff residing on the premises);
(ii) or that threatens the health, safety, or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises;
(7) if the tenant is fleeing to avoid prosecution, or custody or confinement after conviction, for a crime, or attempt to commit a crime, that is a felony under the laws of the place from which the individual flees, or that in the case of the
State of New Jersey, is a high misdemeanor;
(8) if the tenant is violating a condition of probation or parole under Federal or State law;
(9) determination made by the Landlord that a household member's abuse or pattern of abuse of alcohol threatens the health, safety, or right to peaceful enjoyment of the premises by other residents;



9

Form HUD-90105a
12/2007

OMB Approval 2502-0204
Exp 06/30/2017

(10) if the Landlord determines that the tenant, any member of the tenant's household, a guest or another person under the tenant's control has engaged in the criminal activity, regardless of whether the tenant, any member of the tenant's household, a guest or another person under the tenant's control has been arrested or convicted for such activity.

d. The Landlord may terminate this Agreement for other good cause, which includes, but is not limited to, the tenant's refusal to accept change to this agreement. Terminations for "other good cause" may only be effective as of the end of any initial or successive term.

The term material noncompliance with the lease includes: (1) one or more substantial violations of the lease; (2) repeated minor violations of the lease that (a) disrupt the livability of the project; (b) adversely affect the health or safety of any person or the right of any tenant to the quiet enjoyment to the leased premises and related project facilities, (c) interfere with the management of the project, or (d) have an adverse financial effect on the project (3) failure of the tenant to timely supply all required information on the income and composition, or eligibility factors, of the tenant household (including, but not limited to, failure to meet the disclosure and verification requirements for Social Security Numbers, or failure to sign and submit consent forms for the obtaining of wage and claim information from State Wage Information Collection Agencies), and (4) Non-payment of rent or any other financial obligation due under the lease beyond any grace period permitted under State law. The payment of rent or any other financial obligation due under the lease after the due date but within the grace period permitted under State law constitutes a minor violation.

e. If the Landlord proposes to terminate this Agreement, the Landlord agrees to give the Tenant written notice and the grounds for the proposed termination. If the Landlord is terminating this agreement for "other good cause," the termination notice must be mailed to the Tenant and hand-delivered to the dwelling unit in the manner required by HUD at least 30 days before the date the Tenant will be required to move from the unit and in accordance with State law requirements. Notices of proposed termination for other reasons must be given in accordance with any time frames set forth in State and local law. Any HUD-required notice period may run concurrently with any notice period required by State or local law. All termination notices must:

- specify the date this Agreement will be terminated;
- state the grounds for termination with enough detail for the Tenant to prepare a defense;
- advise the Tenant that he/she has 10 days within which to discuss the proposed termination of tenancy with the Landlord. The 10-day period will begin on the earlier of the date the notice was hand-delivered to the unit or the day after the date the notice is mailed. If the Tenant requests the meeting, the Landlord agrees to discuss the proposed termination with the Tenant;
- and advise the Tenant of his/her right to defend the action in court.

f. If an eviction is initiated, the Landlord agrees to rely only upon those grounds cited in the termination notice required by paragraph e.

24. Hazards:



10

Form HUD-90105a
12/2007

OMB Approval 2502-0204
Exp 06/30/2017

The Tenant shall not undertake, or permit his/her family or guests to undertake, any hazardous acts or do anything that will increase the project's insurance premiums. Such action constitutes a material non-compliance. If the unit is damaged by fire, wind, or rain to the extent that the unit cannot be lived in and the damage is not caused or made worse by the Tenant, the Tenant will be responsible for rent only up to the date of the destruction. Additional rent will not accrue until the unit has been repaired to a livable condition.

25. Penalties for Submitting False Information:
Knowingly giving the Landlord false information regarding income or other factors considered in determining Tenant's eligibility and rent is a material noncompliance with the lease subject to termination of tenancy. In addition, the Tenant could become subject to penalties available under Federal law. Those penalties include fines up to $10,000 and imprisonment for up to five years.

26. Contents of this Agreement:
This Agreement and its Attachments make up the entire agreement between the Landlord and the Tenant regarding the unit. If any Court declares a particular provision of this Agreement to be invalid or illegal, all other terms of this Agreement will remain in effect and both the Landlord and the Tenant will continue to be bound by them.

27. Attachments to the Agreement:
The Tenant certifies that he/she has received a copy of this Agreement and the following Attachments to this Agreement and understands that these Attachments are part of this Agreement.

   a. Attachment No. 1 – Owner's Certification of Compliance with HUD's Tenant Eligibility and Rent Procedures, form HUD-50059

   b. Attachment No. 2 - Unit Inspection Report.

   c. Attachment No. 3 - House Rules (if any).

28. Tenants' rights to organize:
Landlord agrees to allow tenant and tenant organizers to conduct on the property the activities related to the establishment or operation of a tenant organization set out in accordance with HUD requirements.

29. Tenant Income Verification:
The Tenant must promptly provide the Landlord with any letter or other notice by HUD to a member of the family that provides information concerning the amount or verification of family income in accordance with HUD requirements.

30. The lease agreement will terminate automatically, if the Section 8 Housing Assistance contract terminates for any reason.

31 Signatures:




11

Form HUD-90105a
12/2007

OMB Approval 2502 0204
Exp 06/30/2017

TENANT BY:

1. _____  __11/29/18__
   Date Signed

2. _____  __/__/__
   Date Signed

3. _____  __/__/__
   Date Signed

4. _____  __/__/__
   Date Signed

5. _____  __/__/__
   Date Signed

LANDLORD BY:

_____  __11/29/18__
Date Signed

Public reporting burden - HUD is not requesting approval of any burden hours for the model leases since use of leases are a standard business practice in the housing rental industry. This information is required to obtain benefits. The request and required supporting documentation are sent to HUD or the Contract Administrator (CA) for approval. The lease is a contract between the owner of the project and the tenant(s) that explains the terms for residing in the unit. Leases are a standard business practice in the housing rental industry. Owners are required to use the HUD model lease which includes terms normally covered by leases used in the housing rental industry plus terms required by HUD for the program under which the project was built and/or the program providing rental assistance to the tenants.

This information is authorized by 24 CFR 5.360, 236.750, 880.606, 883.701, 884.215, 886.127, 891.425, 891.625 and 891.765 cover lease requirements and provisions. This information is considered non-sensitive and does not require any special protection.

 

| VIOLENCE, DATING VIOLENCE OR STALKING | U.S. Department of Housing and Urban Development Office of Housing | OMB Approval No. 2502-0204 Exp 6/30/2017 |

## LEASE ADDENDUM
## VIOLENCE AGAINST WOMEN AND JUSTICE DEPARTMENT REAUTHORIZATION ACT OF 2005

| TENANT | LANDLORD | UNIT NO. & ADDRESS |
|---|---|---|
| MARK HAYNES | FIFTH & 106TH STREET ASSOCIATES L.P. | 15B, 4 EAST 107TH ST. NEW YORK, NY 10029 |

This lease addendum adds the following paragraphs to the Lease between the above referenced Tenant and Landlord.

### Purpose of the Addendum

The lease for the above referenced unit is being amended to include the provisions of the Violence Against Women and Justice Department Reauthorization Act of 2005 (VAWA).

### Conflicts with Other Provisions of the Lease

In case of any conflict between the provisions of this Addendum and other sections of the Lease, the provisions of this Addendum shall prevail.

### Term of the Lease Addendum

The effective date of this Lease Addendum is <u>October 1, 2018</u>. This Lease Addendum shall continue to be in effect until the Lease is terminated.

### VAWA Protections

1. The Landlord may not consider incidents of domestic violence, dating violence or stalking as serious or repeated violations of the lease or other "good cause" for termination of assistance, tenancy or occupancy rights of the victim of abuse.
2. The Landlord may not consider criminal activity directly relating to abuse, engaged in by a member of a tenant's household or any guest or other person under the tenant's control, cause for termination of assistance, tenancy, or occupancy rights if the tenant or an immediate member of the tenant's family is the victim or threatened victim of that abuse.
3. The Landlord may request in writing that the victim, or a family member on the victim's behalf, certify that the individual is a victim of abuse and that the Certification of Domestic Violence, Dating Violence or Stalking, Form HUD-91066, or other documentation as noted on the certification form, be completed and submitted within 14 business days, or an agreed upon extension date, to receive protection under the VAWA. Failure to provide the certification or other supporting documentation within the specified timeframe may result in eviction.

_____    __11/29/18__
Tenant                              Date

_____    _____ Landlord
Date

Form HUD-91067
(9/2008)

## LAKEVIEW APARTMENTS
## RIDER TO HUD MODEL LEASE

**THIS RIDER TO LEASE** ("Rider") is made between Fifth and 106th Street Associates, L.P., a New York limited partnership, as landlord ("Landlord"), and _Mark Hayms_ , as Tenant ("Tenant"), and modifies that certain Residential Lease – Lakeview Apartments between Landlord and Tenant dated _October 1st_, 2018 (the "Lease"). Capitalized terms not defined herein have the meanings set forth in the Lease.

1. Landlord and you hereby acknowledge and agree as follows:

    a. The Lease has been entered into pursuant to the terms of that certain Agreement dated as of June 6, 2018 by and between Lakeview Apartments Tenants' Association, the Landlord, and 106th Street Houses, Inc. (the "Settlement Agreement"). The Settlement Agreement is hereby incorporated by reference into the Lease, and Landlord and you specifically agree hereby to comply with the terms of the Settlement Agreement. In the event of any inconsistency between the terms of this Lease and the Settlement Agreement, the latter shall govern.

    b. Landlord and Lakeview Apartments Housing Development Fund Corporation have entered into (a) that certain Regulatory Agreement dated as of September 28, 2018 with the City of New York, acting by and through its Department of Housing Preservation and Development, (the "HPD Regulatory Agreement") and (b) that certain Regulatory Agreement dated as of September 28, 2018 with the New York State Housing Finance Agency (the "HFA Regulatory Agreement").

    c. Pursuant to Section 4(B) of the HPD Regulatory Agreement and Section 4.2(b) of the HFA Regulatory Agreement, the Apartment is made subject to the Rent Stabilization Law and Landlord is required to register the Apartment's rent with the New York State Homes and Community Renewal (or any successor agency enforcing the Rent Stabilization Law) in accordance with its procedures and guidelines, including, but not limited to, the registration of the rent charged for the Apartment as permitted by the Settlement Agreement and the Lease as a preferential rent.

    d. Notwithstanding the foregoing, as set forth in Section 4(F) of the HPD Regulatory Agreement and Section 4.2(e) of the HFA Regulatory Agreement, for so long as the Apartment is subject to a Project-Based Rental Assistance contract under Section 8 of the United States Housing Act of 1937, as amended (the "HAP Contract"), the Apartment is exempt from the Rent Stabilization Law other than the requirement to register rents as provided above.

  e.. If at any time during the term of the Lease or any extension thereof any governmental agency requires the inclusion of an additional lease rider or addendum to impose additional restrictions in accordance with applicable governmental requirements, the Tenant agrees to cooperate with the Landlord in amending the Lease to add such lease rider.

[signatures on following page]

IN WITNESS WHEREOF, the parties hereto have signed this Rider.

LANDLORD:

FIFTH AND 106TH STREET ASSOCIATES, L.P.,
a New York limited partnership

By: Lakeview Apartments LLC,
a New York limited liability company
its authorized representative

By _____
Name: _____
Title: _____

TENANT:

Witness: _____        Name: _____

Witness: _____        Name: _____

Witness: _____        Name: _____

Witness: _____        Name: _____

US_134523851v3_384952-00001 10/27/2018 9 56 AM

## LAKEVIEW APARTMENTS
## RENT CONCESSION RIDER

### (PBRA Tenants With Incomes Above 95% of Area Median Income But Below $250,000)

THIS RIDER TO LEASE ("Rider") is made between Fifth and 106th Street Associates, L.P., a New York limited partnership, as landlord ("Landlord"), and **Mark Haynes**, as Tenant ("Tenant"), who are the parties to that certain Residential Lease – Lakeview Apartments between Landlord and Tenant dated **October 1**, 2018 (the "Lease"). Capitalized terms not defined herein have the meanings set forth in the Lease.

Notwithstanding anything to the contrary in the Lease, the amount per month that the Tenant is required to pay as rent from its own funds (i.e., not including the Assistance Payment provided by HUD) shall be subject to a cap calculated as follows:

1. Subject to paragraph 2 hereof,

   (a) The increase in the Tenant's rent contribution for the initial one-year term of the Lease shall be capped at 15% above the Tenant's rent contribution payable immediately prior to the commencement of the first one-year term of the Lease;

   (b) With respect to each subsequent one-year term of the Lease, the increase in the Tenant's rent contribution shall capped by 5.5%.

2. In no event will be Tenant's rent contribution exceed either (a) 30% of the Tenant's income under its then-current tenant income certification, or (b) 80% of the market rent for the Apartment, as determined by Landlord.

3. The Tenant's right to the rent concession provided by this Rider is strictly contingent on the Tenant's payment of rent on a timely basis each month and compliance with all other provisions of the Lease and all Riders and attachments thereto, including but not limited to requirements for income recertifications. In consideration of the Landlord's agreement to enter into this Rider, the Tenant agrees that in the event of a default under the Lease, the Landlord may require, in addition to any other remedies available to Landlord under the Lease or conditions to declaring such default cured, that the Tenant pay the aggregate amount by which the Tenant's rent contributions have been reduced pursuant to this Rider.

[signatures on following page]

US_136145248v3_384952-00001 10/27/2018 11:42 AM

Applicant: MARK HAYNES                    Move-In/Recert Date: _____

When using the pay stubs to calculate employment income, we must calculate income based on both (I) a pay stub average and (II) year to date earnings and use the higher of the two numbers.

How many pay stubs do you have from the resident/applicant? (You should have the six most recent consecutive pay stubs except in instances in which the resident/applicant began the job within the last few weeks). **6**

How is the applicant paid? **weekly**

Is employment seasonal, sporadic, or ending in the next 12 months? (C) **No**    If yes, how many pay periods will they work in the next year? ____

Enter the gross earnings from each of the pay stubs.

(1) $4,801.87  + (4) $3,597.65
+ (2) $4,801.87  + (5) $3,700.99
+ (3) $4,171.76  + (6) $4,916.80

This is the annual income calculation based upon the pay stub average (I)

$25,990.94 ÷ 6 × 52 = **$225,254.81**

Enter the employee start date. ____

Enter the pay date listed on the most recent pay stub. ____

Enter the gross year to date earnings from the most recent stub. ____

0 days = 0 periods

This is the annual income calculation based upon year to date earnings (II)

$0.00 ÷ 0.000 × 0 = $0.00

The higher of the two amounts is based on the pay stub calculation    **$225,254.81**    Clear

30% × 225,254.81
= 5631.37

$$\frac{225,254.81}{12} = 18,771.23$$

**Pay stub Worksheet**

4/03                                MBMS-3L